Alright, our next case for argument is 24-1082, CA, Inc. v. Netflix. Mr. Young, please proceed when you're ready. Good morning, Your Honors. May it please the Court. Dan Young with Corals and Brady representing CA, Inc. The Board's finding that the Rebecki reference invalidates the independent claims of the 491 patent lacks substantial evidence because there's no way to map the Rebecki reference in a manner that discloses all the claim elements, and those mistakes and errors are shown in the Board's decision. With respect to Claim 1, it's important to understand what the actual elements are. It has a first node, and that node tells a plurality of nodes to perform an operation. That operation is a procedure of an application, so it's a subpart of an application. Instruct the plurality of nodes how to perform the operation using computer code. Tell the plurality of nodes what to do with the results. Do all of this wherein the first node does not know which one of the plurality of nodes will perform the operation. So you have an instruction going to a plurality of nodes about a single operation, and the first node does not know which one of the plurality will perform the operation. This claim reflects the decentralized peer-to-peer system that's reflected in Claim 1. Decentralized meaning like it's in Figure 1 of the 419 patent. You have a number of nodes, and that particular embodiment, they have an evaluator, has logic. Amongst the nodes themselves, it decides which one is going to perform the operation. Counsel, not to cut you off, but I don't think we need the technical tutorial. We've all read the patent, and so why don't you get to how you think the district court erred with regard to the claim limitations. Yes, Your Honor. So with respect to Limitation 1B, the limitation requires the first node to tell a plurality of nodes to perform an operation. In the Verbecki reference, it's undisputed that the job submitter does not have any communications with the working node. So just to come down to it in English, your dispute with respect to what the board concluded is the board said you claim that the limitations require it to communicate directly. And in the prior art reference, there is this dispatcher thing. Is that what the rub is, whether the board correctly construed it as not necessarily being directly, and you could have this dispatcher and it could still be this? That is part of it, Your Honor. The board made three specific decisions or findings with respect to Limitation 1B. The first one is exactly what you said, which is the board says there's no requirement of direct communication from the first node. And so how did the board err in that regard? Well, the claim language requires that there is a telling from the first node to a plurality of nodes. In the Verbecki reference, it's undisputed that the job submitter, which they map as the first node, has no communications with the worker nodes, which they define as the plurality of nodes. And it's very important that they did not map the task dispatcher, which is the center of the hub of Verbecki, to any of the claim elements. But the direct versus indirect point, there's nothing in the claim that says it has to be direct point-to-point communication with no intermediary, right? Yes, Your Honor. And then the problem with that is reflected in the next two findings of the board, which is... But didn't you all argue when this case was before the district court that indirect communication satisfied this exact claim limitation? Didn't you all already argue this point at the district court and you took the opposite side? No, Your Honor. What they point out are the... They point out certain infringement contentions that have an accused functionality of the accused system. None of the actual underlying functionality of that system is before the board in this case. On page A22 of this opinion that's in front of us at footnote 3, this opinion notes that you argued in your infringement contentions that indirect communication, and this is a quote, indirect communication between the first node highlighted in blue and the second node, Titus Agent, meets the claim limitation. So you actually used the words in your district court proceeding that indirect communication was sufficient to meet infringement of this exact claim limitation. So what do we do with that? So with respect to... You can't have it one way for validity and a different way for infringement.  It has to be the same. But the claim language requires that the first node tell the plurality nodes to perform an operation. So whether... Now if you want to say indirect communication means that it goes through a router or another server, that communication has to go from the first node to the plurality of nodes. And in this situation with the Rebecca reference, that clearly doesn't happen. All the communications from the first node go to the task dispatcher. The task dispatcher then takes what was a job, which the board... I'm sorry, which Netflix mapped to... That's a job to an application, which is not an operation, an application. The task dispatcher then takes that communication from the first node, separates it out, and says to individual nodes, you do this one, you do this task, you do this task, you do this task, you do this task. So in the Verbecky reference, there is no communication, whether it's direct or indirect, that go from the first node to the actual plurality of nodes, which is what... What about figure six in Verbecky? Yes, Your Honor. The first node goes to the task dispatcher, and then there's interaction between the task dispatcher and the other nodes. I can barely read these because the boards are so small, but am I missing something about this figure? Yes, Your Honor. What you're missing is that the job submitter is submitting a job. That is the application. It says run this application. What the task dispatcher does then is take that job, break it up into tasks, and then dispatch those tasks to the various nodes. So the communication that the job submitter, the first node, is giving to the task dispatcher is not the communication that the task dispatcher then sends to the individual nodes. And if you see figure 14, which is another representation of what the task dispatcher does... Am I right? Have you now pivoted? Have you now given in that even if it occurs by indirect communication, in this case, the accused reference doesn't disclose it. So have you now accepted that indirect communication is sufficient? Your Honor, if it's indirect communication of the operation... In other words, the individual operation... The whole crux of this patent is that a single operation has to be instructed to a plurality of nodes. And then one of those nodes has to perform the operation. And if you look at the other board's findings, this is where this ends up falling apart. It says, as an example, the board used figure 5 of Rebecki to show, oh, no, there's evidence here that the task dispatcher sends the same operation to multiple nodes. And it said exactly on appendix 23, figure 5, Rebecki depicts the task dispatcher upon receiving a job from the job submitter, dispatches partitions of the job to a plurality of worker nodes as a plurality of tasks. So is your problem now that when the job submitter communicates indirectly to the worker node through the task dispatcher, is your problem that the operation is being broken up and distributed in prior art to a number of different nodes, which are each performing a part of the operation, but not any one of the plurality of nodes is performing the entire operation? Is that your argument? Yes, Your Honor. So that's not... Then you're not having a problem with indirect communication. So even though I understood the bulk of your brief to go to this indirect communication, that isn't... It seems to me that you seem to... If the job submitter sent the entire task to the task dispatcher, and then the task dispatcher sent that entire task to a single worker node, and it was all performed like that, you're telling me that would be okay? So, Your Honor, in your example, if the communication was like through a conduit, and it says the task dispatcher is just a conduit... Yeah, but the task dispatcher chooses, for example, which of the plurality of nodes has free time to perform this function, this operation. So the task dispatcher chooses which node to give it to. You're saying that would meet the claim limitations? No, Your Honor, because the claim limitations require... This is very important. This is the crux of this. That when the first node has to tell a plurality of nodes to perform without knowing which one is going to perform the operation, which one is going to perform the operation... Right. It doesn't care. It doesn't care which one. It doesn't care which one. It just wants the operation to get done. So in the conduit example, the task dispatcher does not just send the request through the job submitter to the plurality of nodes. It doesn't do that. It says the job submitter submits an application, the operations are part of that, to the task dispatcher. The task dispatcher then says for each task, one individual node is going to perform that operation. The task dispatcher is not saying you three nodes perform it, and then you nodes decide amongst yourselves which one is going to perform. This is the problem. If you use the task dispatcher, the reason they don't map... Are you referring to figure five? Are we talking about figure five here? Figure five is the only evidence that the board relied on to buttress their finding that the task dispatcher assigns a single operation to multiple nodes. And that's clearly not what's going on there. Figure five actually shows in the annotated yellow boxes, each one of those is a task. But even if you were to say that's all one task, and each node is doing the task, then you're not satisfying element 1E, because it says to know which one of the tasks are going to perform the operation. This is the difference between the centralized system of Rebecki and the decentralized system of the claimed invention. Claimed invention allows the workers in Rebecki don't do... These do exactly what they're told. By the way, you said the only thing that the board relied on was figure five from Rebecki, but didn't they also rely on expert testimony? I seem to remember them expressly citing expert testimony as well. They relied on expert testimony with respect to figure five. Right, okay. So it wasn't just the figure itself. It's not like I, Kimberly Moore, can look at that figure the same way the board did. They looked at it through the lens of expert testimony that they found credible. Correct? They absolutely relied on expert testimony. But again, the expert testimony can't contradict what was clearly on the face of the figure. Figure five clearly shows that you have individual tasks. In this particular case, task electrons 1 through 1200, 401 through 600, 201 through 1400. Those are each a task given to a single node. And that, again, the instruction needs to be to a plurality of nodes where only one node performs the operation. That sounds like a claim construction argument to me, what you're saying, because the expert testimony was you look at this limitation, tell a plurality of nodes, and that a person of skill in the art would understand that what Rebecki does is telling a plurality of nodes. So are you making a claim construction argument? No, Your Honor. The claims are plain on their face. If you take that description, which you just said, with respect to element 1B, then you have not satisfied element 1B, which says one node has to perform the operation. And, Your Honor, I'm kind of running out of time, but just very quickly, the findings just don't go with respect to limitation 1B. It says that you have to identify with computer code how to perform the job. And, again, there's no instructions from the first node to the worker nodes how to perform the operation using computer code. What happens is the first node will put an identifier saying this is the type of operation it is. The task dispatcher will figure out from the repository whether or not the code exists. If the code exists, it will then send it to the worker nodes to perform the operation. But, again, there's no direction from the job submitter to a plurality of worker nodes to perform the operation using code. And then, similarly, there's no discussion in limitation 1D as to what to do with the results. All that happens is the job submitter submits the job. The task dispatcher assigns the job. The worker nodes then return the results to the task dispatcher. And that's clear in many of the figures, including Step 1526 of Figure 9, as an example, or 2026 of Figure 14. And then, finally, with respect to the dependent claims, the dependent claims 7, 8, and 14 require that the code requires the code to remove itself upon completion of the process. There's no disclosure whatsoever in Berbecki that that removal occurs from the worker nodes. The worker nodes are where that code resides. That's where it has to execute. It can't execute in a repository. And all Berbecki says is that once the job is completed, the tasks are then removed from the repository. There's no discussion that the nodes are what actually remove the code upon completion. And even further, with respect to Claim 8, it says the first node must instruct the second node to remove the code upon completion. That second node is part of the plurality nodes. And, obviously, there's no interaction between individual working nodes with respect to the code. That also sounds like a claim construction argument to me, that the code has to be removed from the worker nodes. Well, the claim specifically says that it has to be removed upon completion. The code is the anticipated basis for the code refers to the first claim where it's telling the worker nodes what to do with the code. So the plain language of the claim clearly shows where the code is supposed to be when executed, and then, again, where that would have to be removed from. Okay, thank you, Mr. Young. Let's hear from opposing counsel. Mr. Batts? Thank you, Your Honors. Good morning. Harper Batts on behalf of Pelley Netflix. I think I'd like to start off just initially briefly on the indirect communication. I think it was pretty clear. Judge Moore, you asked whether there was anything in the claim that required direct communication. You said no. I think that forecloses it. That's consistent with the admission that we pointed to from the hearing below, where the judge specifically asked them about indirect communication, and there was admission that there was indirect communication. So what I do want to turn to is I want to address the claim limitations 1B and 1E, and specifically this argument. Well, I'm not sure. I found it a little confusing, but I think that I understood him to be saying even if indirect communication is satisfied, it's not the operation because it's being split off and performed by different nodes. So I'm not sure I understand whether that is distinct from the direct indirect communication argument or part of it or if it's part of the operation argument. But can you address that part? Wherever it falls in the claims, can you address it? So I think what I look at is the claim language that they were disputing below. I guess what they have is their second argument in their brief was to tell a plurality of nodes to perform an operation. And so on that issue, they were arguing that Figure 5 does not show that. So the board credited multiple different portions of Rebecca for this issue beyond Figure 5, but I do want to address Figure 5 because they went into detail on that. It's tell a plurality of nodes to perform an operation. Instruct them to perform the operation. Tell the plurality of nodes what to do with the result of the operation. So I guess the question, and I'm not positive I understood this to be the argument, but I think the question is do you just have an intermediary where it's picking a node and sending it and the whole operation is being done by that intermediary, or is the operation being broken up into parts and distributed among multiple nodes? So, yeah, so I'd like to walk through the mapping of what we did for Rebecca to answer your question. Okay. So the mapping of Rebecca, and we could start with Figure. What page do you want me to start with? I'll start with appendix page 83, just briefly back to the petition, just the starting point. And this is limitation 1B. And at the bottom there, we explain how Rebecca renders obvious 18B, and we say each operation of the plurality of operations comprising a procedure of the application. And then we put in parentheses as an example, e.g., a task, 1104A through 1104C. So what we identified in Rebecca is satisfying an operation which is comprising a procedure of the application was any of these tasks, 1104A, B, or C. And so I'd like to go to that Figure 5 because I do think walking through that, it makes this clear. Figure 5, and I'm looking on the red brief at page 43 because that's the annotated version that the parties were discussing about Figure 5. You see there on Figure 5, there is on the third row, there is something called in the middle, the job repository for Monte Carlo X-ray generation code, 1102B. That was identified as the job, that the application is the job, so that job. That job then branches out into three different boxes, and those are the boxes that we just identified. Let me ask a stupid question. What is synonymous to an operation, a task, or a job, or something, a subset?  So that's what I'm getting to. So then we start with job. Very excited about that, weren't you? Sorry. I like this one. So 1102B is a job, right? That's the application overall. Then part of the application gets broken up into operations, and that, for Becky, is a task. So X-ray generation gets split up into 1104A is X-ray generation in aluminum. That's one task. A second task is shown, 1104B, X-ray generation in copper. And lastly, there's X-ray generation in silicon. Then what you see below that and highlighted in the yellow boxes is that task, so for example, 1104A for X-ray generation in aluminum, that task, which is an operation, is being performed on different sets of electronics. So it's kind of, I guess, analogy would be the task is like multiplication, subtraction, addition. And then you're performing that task on a data set. The data sets there are the yellow boxes. And I think the key issue here is beyond the figure five and Dr. Jagadish's explanations of that that were credited by the board, we also have their expert, Dr. Rosenblum, and I'd like to go to 1720, appendix 1720. This is exactly what blows up their argument that they don't have support even from their own expert. So if we go to page 1720 of the appendix, this is the deposition of Dr. Rosenblum. We ask him on deposition page 186, line 19, do you believe, this is asking about figure five, do you believe that there are three tasks under 1104A, or is there a single task under 1104A? And his answer, I believe in this example that there's a single task, and it's the example of the situation described in the specification of Verbecki, where a single task is given to a plurality of workers. So again, going back to the claim language, tell a plurality of nodes to perform an operation. What we said operation was, was a task. He's answering that a single task is being given to a plurality of nodes. And then we continue that, you know, any confusion, again, another question following that immediately. So for this task that's under 1104A, do you believe the different boxes would be spread across the three workers? And he said, yes, I believe that. You're executing the task on these different sets of electrons. So the same task is being, they're telling a plurality of nodes to perform an operation or a task. And that task can be 1104A, 1104B, 1104C, as well as other examples in Verbecki. It's not limited to Figure 5, but that's the figure that the board, they raised in their patented response. The experts discussed in the deposition, and the board then discussed in the final written decision in rejecting the argument. So I think that addresses 1B. I'd just like to briefly address the 1E arguments about the one node. And the reason for that, I think, is if we look at the final written decision on pages, page 19 and 20. I'm sorry, what page? 19 and 20. The reason I'm pointing to these pages is that limitation 1E was not contested in any way by the patent owner below at the PTAB. So the board summarized our explanation of how Verbecki teaches 1E on page 19, and continues on page 120 to say, having reviewed the contentions, we find the evidence persuasive. And if we go to even the patent owner response on appendix 1334 to 1335, their patent owner response below at the PTAB, there's no mention of 1E. This is literally an argument that has to be forfeited. There's no mention in their appellate brief. There's no section in their appellate brief about 1E. So these arguments today about the which one node and 1E are nowhere to be found in their briefing here or in the full PTAB proceedings. We never had an argument about 1E being satisfied. We still have our obligation to show it. We showed it. The board credited it. But they had no counterarguments to us. And I'd like to direct your attention also to appendix pages 548 to 550, and I'll go to those briefly. And these appendix pages are from our experts' declaration. And from paragraph 156 through paragraph 160, he provided various explanations of how Verbecki's overall system teaches which worker or which node. So, for example, in paragraph 156 on page 549, he talks about which worker will perform the task. He then goes on in paragraph 160 on appendix page 550. He explains also that it would have been obvious. So beyond the actual teachings of Verbecki, he had an explanation of obviousness based upon four other prior art references. The patent owner chose in the PTAB proceedings not to contest 1E. They chose not to even address these other references, the obviousness argument. Okay, we have this. Why don't you move to 1D and then hit upon the dependent claims and then take your seat. Sure. I think the removing code, so dependent claim 17, rooming code, I think Judge Hall correctly identified. It is essentially that they're asking for a claim construction issue. The evidence is clear. I don't think it's disputed that code is removed. And they are now arguing that, well, the code has to be removed from a worker node. And that was not, the board did not agree with that. They did not propose a claim construction for that. So substantial evidence supports that position. 1D. I think you asked about one other one. I think those were the ones that I wanted to address, Your Honor, unless there's any other questions. Okay, thank you very much. Thank you. Mr. Young, I gave you two extra minutes. Thank you. Thank you, Your Honor. Just very quickly, with respect to Figure 5 and that testimony with respect to Dr. Rosenblum, on Appendix 1720 on page 185, the question is, is your understanding that each one of those yellow boxes is a separate task? Answer, yes. That is my understanding. It's the data for three separate tasks. So what you have here is a situation where you have each node is being assigned a specific task from the task dispatcher. The situation is not where the task dispatcher says to three nodes, perform an operation, and those nodes decide which one will do the operation. This also dovetails in with respect to Claim 1E where they say, we did not raise it or we did not argue that Claim 1E was not satisfied. The reason for that is they decided to map, to not include the task dispatcher as part of their mapping. So under that mapping, then yes, the first node doesn't know which one of the nodes is performing the operation because all the first node does is send in the application, which again is mapped to the, application is mapped to job, operation is mapped to task. So all the job dispatcher, all the job submitter does is submit the operation or the job to the task dispatcher. Task dispatcher makes that determination. So under that situation, yes, 1E is satisfied. But you can't satisfy 1E and still satisfy 1B. That's the point. Because there is nothing that goes from the job submitter that here's an operation, you three or four or five nodes, your plurality of nodes perform the operation, and then we don't know which one of you performs the operation. So with respect to Figure 5, even if you say yes, this is the same task or same operation that each of the three nodes is performing, that's not what the back end of the claim requires. It says only one. And that's because you go back to the centralized versus decentralized nature of the asserted claim, which is decentralized, to the centralized nature of the prior art. They're vastly different. Okay. Thank you, counsel. Your time is up. I thank all counsel. This case is taken under submission.